UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-cv-00119-JHM

SALLIE LINDSEY, individually,                                           PLAINTIFF
and as Executrix of Tempie Taylor, Deceased

V.

U.S. BANK NATIONAL ASSOCIATION, et al.                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DN 34].

Fully briefed, this matter is ripe for decision.  For the following reasons, Defendants' Motion for

Summary Judgment is **GRANTED**.

I. BACKGROUND

The decedent, Tempie Taylor, died on August 2, 1997.  (Jefferson County Probate Pet.

[DN 34-2] at 1.)  Plaintiff Sallie Lindsey, Taylor's daughter, claims that before Taylor's death,

Taylor purchased a number of United States Savings Bonds between August 29, 1984 and

August 2, 1997.  (Am. Compl. [DN 18] ¶ 18.)  Taylor purportedly placed these bonds in a safe

deposit box at Great Financial Federal (hereinafter "GFF"), which is now Defendant U.S. Bank.

(Id. ¶ 17.)  Plaintiff learned of the existence of the safe deposit box when she visited GFF two

weeks after Taylor's death.  (Pl.'s Dep. [DN 34-4] at 34:4–14.)  During her visit, Plaintiff states

that she was informed by a bank teller that Willard Smith, Plaintiff's half-brother, had removed

the contents of the safety deposit box.  (Id. at 51:10–21; 56:6–13.)

Plaintiff admits that she never saw any paperwork associated with the safe deposit box

and she did not know if anyone else owned the box along with Taylor.  (Id. at 41:15–21; 42:1–9.)

However, Plaintiff claims that did see Taylor's savings bonds, two in the amount of $500,000,

and others in the amounts of $100,000, $50,000, $10,000, and $5,000.  (Id. at 11:1–4.)  Though she has seen the bonds themselves, she claims that she no longer has any copies of these bonds. (Id. at 11:6–14.)  Plaintiff inquired with the United States Department of the Treasury, specifically, the Bureau of the Fiscal Service, about the status of Taylor's bonds.  (Id. at 11:14–23.)  The Bureau of the Fiscal Service responded by mail, stating that Taylor's social security number did not identify any unredeemed bonds, that all bonds had been paid to Taylor, and that the bonds were paid on various dates between April 1986 and June 1995.  (Treasury Letter [DN 34-5] at 1.)  Plaintiff testified that upon asking Smith what happened to the bonds, he stated that Taylor "spent them raising kids."  (Id. at 21:1–3.)  Additionally, the bonds at issue were not accounted for in Taylor's will.  (Id. at 48:14–15.)

On November 26, 2001, Plaintiff was appointed as the Executrix of her mother's Estate. (Jefferson County Probate Pet. [DN 34-2] at 1.)  On January 9, 2004, Plaintiff was discharged as the Executrix, and Plaintiff executed an affidavit in which she represented that "[a]ll legal claims and debts" of the Estate had been paid, that each beneficiary had received his/her share of Estate proceeds, and that she accepted the Probate Court's disposition therein as "final settlement" of the Estate.  (Jefferson County Probate Aff. [DN 34-3] at 1.)

Despite the resolution of Taylor's Estate in 2004, Plaintiff brought this suit individually and as Executrix of the Estate against Defendant U.S. Bank for breach of contract.  (Am. Compl. [DN 18] ¶¶ 17–21.)  Plaintiff alleges that Taylor and the Bank (originally GFF, now U.S. Bank), entered into a bailment contract, by which the Bank became the bailee and had the duty to safely care for items in the safe deposit box.  (Id. ¶¶ 17–18.)  Plaintiff asserts that she is the intended beneficiary of the bailment contract and a payee of the bonds allegedly placed in the safe deposit box.  (Id. ¶¶ 10, 19.)  Alleging that Plaintiff has not met her burden to prove the elements of the

breach of contract action, Defendant now moves for summary judgment.  Plaintiff did not respond to this Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]"  Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

## III. DISCUSSION

Under Kentucky law, to prove breach of contract a plaintiff must demonstrate: "(1) a contract between the parties; (2) a breach of that contract; and (3) damages caused by the breach." Texas Capital Bank, N.A. v. First Am. Title Ins. Co., 822 F. Supp. 2d 678, 682 (W.D. Ky. 2011). In order to survive summary judgment, Plaintiff "must make a sufficient showing of each element of [her] claims, because [s]he would bear the burden of proof on those elements at trial." Escue v. Sequent, Inc., 568 F. App'x 357, 363 (6th Cir. 2014) (citing Vereecke v. Huron Valley Sch. Dist., 609 F.3d 392, 399 (6th Cir. 2010)).

First, in order "[t]o establish a breach of contract claim under Kentucky law, the plaintiff must show by clear and convincing evidence that an agreement existed between the parties." C.A.F. & Assocs., LLC v. Portage, Inc., 913 F. Supp. 2d 333, 342–43 (W.D. Ky. 2012) (quoting Associated Warehousing, Inc. v. Banterra Corp., No. 5:08-CV-00052-TBR, 2010 WL 2745981, at *2 (W.D. Ky. July 9, 2010), aff'd, 491 F. App'x 516 (6th Cir. 2012); Auto Channel, Inc. v. Speedvision Network, LLC, 144 F. Supp. 2d 784, 790 (W.D. Ky. 2001)). Here, the contract at issue was one for bailment.[1] "A bailment occurs when one person (the bailor) delivers possession of some personal property to another person (the bailee). The defining element of the transaction is the 'requirement that the property be returned to the bailor, or duly accounted for by the bailee, when the purpose of the bailment is accomplished[.]'" Mezo v. Warren Cty. Pub. Library, No. 2009-CA-000631-MR, 2010 WL 323302, at *2 (Ky. Ct. App. Jan. 29, 2010) (quoting Am. Jur. 2d Bailments § 1 (2009)). The delivery of property to another without any

---

[1] "Even though noncompliance with bailment terms allows a plaintiff to elect to sue in contract or in tort, under Kentucky law, a plaintiff must elect whether to proceed in contract or in tort for claims arising from the same factual circumstances." Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc., No. 3:09-CV-00808-CRS-JD, 2012 WL 5362306, at *5 (W.D. Ky. Oct. 31, 2012), amended sub nom. Chisholm v. Am. Cold Storage, Inc., No. 3:09-CV-808-CRS, 2013 WL 416291 (W.D. Ky. Jan. 31, 2013) (citing Cincinnati N.O. & T.P. Ry. Co. v. Dority, 166 S.W.2d 996, 996 (Ky.1942); Beaver Dam Coal Co. v. Brashear, 54 S.W.2d 609, 610 (Ky.1932)). Here, Plaintiff chose to bring this action in contract rather than tort; therefore, the Court will examine this breach of bailment contract as a standard breach of contract action.

4

terms and conditions whatsoever, at the bare minimum, creates a constructive bailment in which the bailee has a "duty to 'keep [the property] safely and restore it or deliver it to the owner.'" W. Knoxville Assocs. Ltd. P'ship v. Ticor Title Ins. Co., 124 F.3d 201 (6th Cir. 1997) (quoting 8 C.J.S. Bailments § 15). "An implied-in-law, or constructive, bailment may arise 'when one person has lawfully acquired possession of another's personal property . . . and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner.'" Texas Capital Bank, N.A. v. First Am. Title Ins. Co., 822 F. Supp. 2d 678, 683 (W.D. Ky. 2011) (quoting 8 C.J.S. Bailments § 14). Because Kentucky courts have recognized that a contract is not required to create a bailment and Kentucky law recognizes implied-in law contract, "Kentucky courts would [likely] recognize a constructive bailment based upon a proven course of conduct." Id. at 683–84.

Plaintiff claims that GFF breached its bailment or constructive bailment contract with Taylor to keep her property safe and return it to her, and only her, as the owner of the property located within the safe deposit box. Plaintiff alleges that GFF wrongly allowed the bonds to be taken from Taylor's safe deposit box or that GFF somehow misplaced the bonds in violation of Taylor's bailment contract or constructive bailment with GFF. If the bonds were taken, Plaintiff believes her half-brother, Willard Smith, improperly removed the bonds from Taylor's safe deposit box.

First, at issue here is the agreement between the decedent, Taylor, and Defendant U.S. Bank (formerly GFF). Taylor allegedly had placed her bonds in a safe deposit box at GFF. However, Plaintiff has not proven that a bailment contract or a constructive bailment contract existed between Taylor and GFF because Plaintiff has failed to produce any evidence to show that Taylor ever conveyed the bonds to GFF. Plaintiff has testified to the fact that she visited

GFF two weeks after her mother's death to inquire about the contents of the safety deposit box, at which time she was told by an unidentified bank teller that "Willard's come in here and cleaned out some boxes."  (Pl.'s Dep. [DN 34-4] at 50:17–25.)  Plaintiff was unaware of the existence of the boxes prior to this visit.  (Id. at 50:7–13.)  Plaintiff stated that she did not know who owned the safe deposit boxes, only that she saw keys to the boxes at a later time.  (Id. at 49:15–21.)  Plaintiff has failed to offer any evidence that Taylor ever entered into a formal bailment contract with GFF, as Plaintiff testified that she has never seen any paperwork to that effect.  Plaintiff additionally has failed to establish that a constructive bailment existed by Taylor transferring property to GFF for safe keeping.  Plaintiff has only supplied self-serving statements as to the existence of the bonds and their place in the safe deposit box or boxes at GFF.  Because Plaintiff has failed to make a sufficient showing of a bailment agreement, either express or constructive, between Taylor and GFF, Plaintiff has not made a sufficient showing for the first element of her claim.

Even assuming that Plaintiff has met her burden on the first element because Taylor did transfer the bonds to the care of GFF, Plaintiff has failed to offer any evidence that GFF breached its contract of safe keeping by either misplacing the bonds or by allowing Willard to unlawfully remove bonds from Taylor's safe deposit box.  First, Plaintiff has failed to identify the property allegedly "lost" or "stolen."  Plaintiff has inquired with the United States Department of the Treasury about the bonds issued to Taylor's social security number.  All of the bonds registered to that number have been cashed.  (Treasury Letter [DN 34-5] at 1.)  Second, Plaintiff has failed to produce evidence of any misconduct or improper conduct on behalf of GFF resulting in the disappearance of the bonds.  The record does not reflect any misconduct on behalf of GFF in misplacing the bonds at issue.  Plaintiffs' theory seems to be that the bank

wrongly allowed Smith to take the bonds from Taylor's safe deposit box.  To that end, Plaintiff testified that an unidentified teller told her that Smith had cleaned out some safe deposit boxes. However, Plaintiff has offered no evidence that Smith actually did this, GFF allowed Smith to do this, or that in allowing Smith to do this, GFF acted improperly.  Without evidence that the uncashed bonds actually exist or existed at any time, and without any evidence showing misconduct or wrongful conduct on the part of GFF, the record does not support a finding of breach.[2]  Therefore, Plaintiff has not made a sufficient showing as to this element.

Lastly, Plaintiff has failed to establish that she has suffered any damages as a result of this alleged breach.  Plaintiff simply claims that she was the intended beneficiary and payee of these bonds.  This declaration is entirely unsupported by the record and Plaintiff has offered nothing other than self-serving statements to shore up this assertion.  Further, as mentioned above, the United States Department of the Treasury cannot locate any uncashed bonds issued under Taylor's social security number.  Correspondingly, Plaintiff has offered no evidence that the bonds that she claims exist actually exist and remain uncashed, as she has lost the copies confirming their issuance.  Therefore, without any evidence of the bonds, their worth, their status as uncashed, or Plaintiff's position as a payee, Plaintiff cannot adequately prove that she has suffered any damages much less determine a measurable amount of damages.  Accordingly, she has failed to make a sufficient showing for the element of damages.

---

[2] Additionally, it is worth nothing that the ownership of the safe deposit boxes is unclear; nothing in the record delineates whether they belonged to Taylor or Smith or both or neither. Plaintiff has not shown that GFF (now Defendant) breached its bailment agreement to keep the property in the boxes safe and return the property to its owner because the owner remains a mystery.  These boxes could have been in Smith's name or Taylor's and Smith's name; Smith could have easily placed the property in a box or boxes himself with Taylor's permission or in the presence of Taylor; Smith could have removed the property from his own box or jointly-owned box, or he could have had rights to access Taylor's box or boxes totally within the bounds of the bailment contract (assuming there was a contract to begin with).  The possibilities are endless.  Without a sufficient showing in the record to show that GFF acted improperly with regard to Smith, Plaintiff cannot adequately show that GFF breached its bailment agreement on this theory.

While Defendants make many other arguments in furtherance of their Motion for Summary Judgment, because Plaintiff has failed produce sufficient evidence for each element of her singular claim, Defendants' Motion for Summary Judgment is granted.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 34] is **GRANTED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 15, 2017

cc: counsel of record